# A F F I D A V I T

**STATE OF WEST VIRGINIA**

**COUNTY OF CABELL**, to-wit:

I, Sean McNees, being first duly sworn, do hereby depose and state as follows:

## Affiant Training and Experience

1. I am currently employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since January 2016. I am assigned to ATF's Charleston, West Virginia, Field Office.

2. I have investigated arson; crimes of violence; conspiracies to commit various crimes involving the use of firearms; the illegal possession, use, and sale of firearms; and the possession, use, and trafficking of illegal controlled substances. I have purchased controlled substances utilizing cooperating individuals in controlled buys. I am familiar with the appearance, packaging, paraphernalia, and distribution of cocaine, crack cocaine, heroin, marijuana, LSD, pharmaceuticals, methamphetamine, and other street drugs. I am also familiar with tactics used by illegal possessors and traffickers of firearms to possess, maintain, acquire, and distribute their firearms.

3. I graduated from a ten-week criminal investigator training course at the Federal Law Enforcement Training Center, where I learned basic criminal investigation techniques. In

addition, I graduated from the twelve-week ATF National Academy, where I learned about federal firearms laws, federal explosives laws, bomb scene investigations, and arson investigations.

4. This affidavit is made in support of a search warrant for one (1) cellular telephone further described in Attachment A, in which I believe that there is probable cause that evidence of violation of Title 18, U.S.C § 922(g)(3)- possession of a firearm by an individual who is an unlawful user of and addicted to a controlled substance as defined in Title 21, U.S.C. § 802. The information detailed in this affidavit is based upon my investigation into Anthony Tevan TYNER. The events described in this affidavit occurred in the Cabell County area of West Virginia and within the Southern District of West Virginia. I believe probable cause exists that TYNER has unlawfully possessed firearms, on multiple occasions, in violation of Title 18, U.S.C § 922(g)(3). Further, I believe probable cause exists that evidence of those offenses is currently located within the electronic data stored on the cellular telephone as more particularly described in Attachment A.

## Background of the Investigation

5. On June 7, 2019, officers with the Huntington Police Department (HPD) responded to a call of individuals in two (2) vehicles shooting at one another in the 2300 block of 10th Avenue. A witness to the shooting later came forward and advised that her

boyfriend, Johnny FRANCIS III, had been involved in the shooting. Jacob LOPER had also been present in the vehicle and he had utilized a firearm, which belonged to FRANCIS III, to shoot at individuals in another vehicle. The witness further advised that FRANCIS III resided at 1281 26th Street, Huntington, WV, which was his grandmother's residence. The witness also stated that after the shooting, FRANCIS III packed up firearms and narcotics inside 1281 26th Street, Huntington, WV and then took them to 931 27th Street, Huntington, WV, which was a residence that FRANCIS III also occupied.

6. On June 12, 2019, officers with the HPD executed State search warrants at 1281 26th Street Huntington, WV and 931 27th Street, Huntington, WV. Along with other items, a Glock, model 23, .40 caliber/9mm pistol, serial number SDV623, was located inside of the residence on 26th Street and seized. Johnny FRANCIS III, was also located inside of the residence on 26th Street and was arrested.

7. Special Agent Sean McNees (SA McNees) later advised FRANCIS III of his Miranda Rights and then interviewed him. FRANCIS III advised that he had possessed the above mentioned Glock pistol and further stated that TYNER had originally purchased the firearm for him.

8. Based upon this information, SA McNees conducted an ATF

eTrace[1] query of TYNER's name. As a result of the eTrace query, SA McNees located ATF Multiple Sale Reports[2] and two (2) Firearm Trace Summaries[3] for firearms purchased by Anthony TYNER. Both of the Firearm Trace Summaries were generated after firearms purchased by TYNER were later recovered in search warrants conducted by law enforcement in the Huntington, WV area.

9. Based upon the above information, SA McNees made contact with TYNER and interviewed him on August 29, 2019, at 120 Jefferson Park Drive, Huntington, WV. During the interview, TYNER was asked about his past firearm purchases. He then estimated that he had spent "thousands of dollars" on firearms over the past year on approximately forty (40) to fifty (50) firearms. TYNER also stated that he had sold fifteen (15) to twenty-five (25) guns over the past "couple of months."

10. TYNER was then asked about his drug use and was specifically asked if he liked to smoke weed. TYNER responded that he "loved smoking weed." TYNER then recalled that he used to have to take several pills every day when he was in school. When he turned twenty-one (21) he lost his insurance and no longer took the

---

[1] eTrace is an ATF paperless firearms trace request submission system that allows for the systematic tracking of a recovered firearm from its manufacturer or importer and subsequent introduction into the distribution chain (wholesaler/retailer) to an unlicensed purchaser.
[2] Federal Firearms Licensees *(FFLs)* must use this form to report all transactions in which an unlicensed person acquired any combination of two or more pistols or revolvers totaling two or more at one time or during five consecutive business days.
[3] Firearm Trace Summaries are an ATF form that contains the identifying information about a traced firearm and who the first unlicensed purchaser was.

medications. TYNER advised that he was not "normal" like other people and he would get mad at video games sometimes. TYNER advised that when he would smoke weed it would "help," and added that he was suicidal and hated his life. TYNER advised that over the past year he smoked weed "almost every day." TYNER thought that he may smoke a "joint or two" every day. TYNER then advised that he had a bad past with drugs and had started using heroin at age sixteen (16) or seventeen (17). TYNER's heroin use lasted about one (1) year and TYNER's mother had tried to get him go to rehab but he never did.

11. TYNER was asked if he currently had any firearms in his possession and he stated that he did. He advised that he had a firearm in the trunk of a vehicle that was parked on the property. TYNER's mother, Tara Jones, was also present during the interview and she advised that the vehicle was under her control and she had driven to the residence from work that day. Jones agreed to give written consent to search the vehicle. The vehicle was then searched and SA McNees located a loaded I.O. Inc., model I0-15, multi-caliber rifle, serial number I105-06201 in the trunk of the vehicle.

12. After the above mentioned I.O. Inc. rifle was located, SA McNees advised TYNER that he was prohibited from possessing firearms due to his admitted drug use. TYNER advised that he understood.

13. On October 8, 2019, SA McNees obtained a federal arrest warrant for TYNER for multiple violations of Title 18, U.S.C. § 922(a)(6)-false statement during the purchase of a firearm, and one count of violation of Title 18, U.S.C § 922(g)(3)- possession of a firearm by an individual who is an unlawful user of and addicted to a controlled substance as defined in Title 21, U.S.C. § 802.

14. On October 10, 2019, Cabell County Sheriff's Office (CCSO) deputies made SA McNees aware of two (2) social media posts from a Snapchat account under the name of "Tae Tae." The first post was a video that depicted three (3) Glock firearm boxes and what appeared to be a Glock pistol on a carpeted floor. The caption on the video read "Fuck the atf" "they can keep takin my shit but ima keep buyin guns regardless". The second post was also a video and it depicted what appeared to be a Star Wars toy, that when opened on the bottom, contained what appeared to be several Xanax pills. CCSO Deputies that were familiar with TYNER stated that the Snapchat account "Tae Tae" was believed to belong to TYNER. Deputy Baumgardner grew up with TNYER and was "friends" on TYNER's Snapchat account. Deputy Baumgardner also witnessed numerous other postings of images of TYNER being posted from the same Snapchat account, prior to the two abovementioned posts. Deputy Jarrell obtained the posts from Deputy Baumgardner and provided them to SA McNees.

15. On October 10, 2019, SA McNees arrested TYNER at the CCSO Ona Field Office based upon the above mentioned federal warrant for his arrest. At the time of his arrest, TYNER was in possession of a red in color IPhone that is further described in Attachment A. Prior to his arrest, TYNER had been observed driving a white in color Hyundai Elantra bearing WV registration 84B-136 to the CCSO Ona Field Office. An unknown W/F was also observed to be present in the vehicle. After TYNER's arrest, contact was then made with the unknown W/F and she was identified as Katelynn Woods. When contact was made with Woods, officers observed a strong odor of marijuana coming from the vehicle. Woods then stated that vehicle belonged to her, and she would give consent to search the vehicle whereupon she signed a consent to search form.

16. The vehicle was then searched and multiple items of marijuana related drug paraphernalia were located in the front passenger area of the vehicle. A Glock, model 19 Gen 4, 9mm pistol, serial number BFRN807, a suspected firearm silencer and other items of evidence were located in the trunk of the vehicle.

17. After his arrest, TYNER was verbally advised of his Miranda Rights by SA McNees. He then admitted to making the two (2) above mentioned Snapchat posts and also admitted to possession of the Glock pistol and suspected firearm silencer that had been located in the trunk of the vehicle that he had driven to the CCSO Ona Field Office.

18. Based on my training, education, experience, and discussions with other trained investigators, I also know Snapchat is one of the most popular applications for sending and receiving 'self-destructing' messages, pictures, and videos. Referred to as 'snaps', the company processes approximately 700 million of them every day on Apple's iOS and Google's Android operating systems. Snapchat users access the application frequently. According to marketing material provided by the company the average Snapchat user checks their account 14 times a day. A "snap" is a picture or video message taken and shared with other Snapchat users in real-time. The sender of a snap has the option of setting a timer for how long a snap can be viewed. Once a snap has been viewed it is deleted from the company's system and is no longer visible to the recipient. Snapchat users can send text messages to others using the Chat feature. Once a user leaves the Chat screen, messages viewed by both the sender and the receiver will no longer be visible. The application notifies other users when they are online so they can begin messaging each other. In addition, Snapchat users can send pictures to other users by utilizing the camera on their device. Pictures can also be sent from the saved pictures in the photo gallery of the device. Cellular telephones are commonly the device that the snapchat application is utilized on.

19. I am submitting this affidavit in support of an application for a warrant to search data stored on the cellular

telephone referenced herein and described in Attachment A. The cellular telephone is currently in my custody at the ATF Field Office in Charleston, West Virginia where it has been securely stored since October 10, 2019. The cellular telephone is equipped with a camera, audio-recording capabilities, and the features and services described herein and in Attachment A.

20. A cellular telephone is a handheld wireless device used primarily for voice communications through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log," which records the phone number, date, and time of calls made to and from the phone.

21. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the cellular telephone contains evidence of violation of Title 18, U.S.C § 922(g)(3)- possession of a firearm by an individual who is an unlawful user of and addicted to a controlled substance as defined in Title 21, U.S.C. § 802.

22. Searching the cellular telephone for the evidence described above may require a range of data analysis techniques. In some cases, it is possible for agents to conduct carefully

targeted searches that can discern evidence without requiring a time consuming manual search through unrelated materials that may be commingled with criminal evidence. Criminals can mislabel or hide directories and other electronic data to avoid detection or take other steps to frustrate law enforcement searches for incriminating data. These steps may require agents to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to determine if it falls within the scope of the warrant. In light of these difficulties, I request permission to use whatever data analysis techniques appear to be necessary to locate and retrieve the evidence described above. While the cellular telephone is capable of accessing the internet and service providers maintaining servers or similar electronic storage facilities, this warrant seeks authority solely to examine the memory of the cellular telephone itself. At no time will techniques be utilized to access data stored at any location other than within the memory of the cellular telephone.

23. The information set forth herein establishes probable cause that Anthony TYNER has possessed firearms in violation of Title 18, U.S.C § 922(g)(3)- possession of a firearm by an individual who is an unlawful user of and addicted to a controlled substance as defined in Title 21, U.S.C. § 802. Further, probable cause exists that evidence of these offenses is currently located

within the memory of the cellular telephone described in Attachment A that was seized during his arrest on October 10, 2019.

24. WHEREFORE, I respectively request issuance of a search warrant to search the identified data stored within the red in color IPhone cellular telephone described herein and in Attachment A.

Further, your affiant sayeth naught.

_____
Sean A. McNees
Special Agent
Bureau of Alcohol, Tobacco and Firearms


1st Sworn to before me, and subscribed in my presence, this the
1 day of ~~October~~ November, 2019.

_____
THE HONORABLE CHERYL A. EIFERT
United States Magistrate Judge
Southern District of West Virginia

11